# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**DR. ADOLFO DANIEL LOPEZ-MIERES**

**Plaintiff,**

**v.**

**CASE NO. 18-1588 (GAG)**

**CARMEN YULIN CRUZ SOTO, IN HER OFFICIAL AND PERSONAL CAPACITY; MUNICIPALITY OF SAN JUAN, ET AL.,**

**Defendants.**

## OPINION AND ORDER

Dr. Adolfo Daniel López-Mieres ("Plaintiff") filed the present suit against Carmen Yulín Cruz Soto in her personal capacity ("CYC"), the Municipality of San Juan ("MSJ"), Carmen Yulín Cruz Soto in her official capacity as the mayor of MSJ ("Mayor Cruz"), Jane Doe, and insurance companies X and Y (Docket No. 5) alleging violations of the First and Fourteenth Amendments to the United States Constitution, pursuant to section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983.

Plaintiff further invokes the Court's supplemental jurisdiction alleged violations of Article II sections 1,4,6, and 7 of the Constitution of the Commonwealth of Puerto Rico and pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141-42, Puerto Rico Law 426 of November 7, 2000, P.R. LAWS ANN. tit. 1, § 601, Puerto Rico Law 14 of April 11, 2001, P.R. LAWS ANN. tit. 29 § 194, Puerto Rico Law 115 of December 20, 1991, P.R. LAWS ANN. tit. 29 § 194, and the Autonomous Municipalities Act, P.R. LAWS ANN. tit. 21 § 4554, 4560, and 4562. Id., ¶ 3,4.

**Case No. 18-1588 (GAG)**

Before the Court are CYC, the MSJ, and Mayor Cruz (collectively, "Defendants"). Defendants' Motions to Dismiss for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 13; 14). CYC argues that she is entitled to qualified immunity in her personal capacity and that Plaintiff is not legally entitled to the relief he seeks. (Docket No. 13 at 1). MSJ and Mayor Cruz posit that Plaintiff has failed to meet the requisite elements under section 1983 and that the claim against Mayor Cruz is redundant and duplicative. (Docket No. 14 at 17).

For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Defendants' Motions to Dismiss.

## I. Relevant Factual Background

Plaintiff served as the Vice-President of the Medical Faculty of the San Juan Municipal Hospital ("Hospital") since 2010. (Docket No. 5, ¶ 15). At the time Plaintiff filed the complaint, he was also the Medical Director of the Hospital's Emergency Room. Id., ¶ 16. At some point during 2017, Plaintiff was consulted at the Hospital regarding a patient with extreme and morbid obesity. Id., ¶ 17. Plaintiff performed physical examinations on the patient and, in view of the patient's obese condition, informed the patient that the Hospital's CT-Scan could not be used to perform the required examination because it had a maximum permissible weight of 350 pounds. Id., ¶ 20. Plaintiff advised the patient that it would probably be necessary to look for other places that could perform the examination. Plaintiff suggested the CT-Scan facilities available at the hippodrome, for Plaintiff had suggested that option to other patients before. Id. Plaintiff alleges that at all times he acted in his usual professional demeanor. Id., ¶ 21.

On August 21, 2017, Plaintiff met with Mr. Cabrera, the Executive Director of the Hospital, to communicate the medical staff's concern related to the sudden termination of employment of the Medical Director, Dr. José Martínez, and its possible repercussions on the medical residency

programs. Id., ¶ 27. Dr. Martínez was also the Director of the Hospital's Endocrinology Program. Id. Plaintiff alleges that his comments were done in his individual capacity, as well as in his official capacity as the Vice-President of the Medical Faculty. Id., ¶ 28. Plaintiff classified his expressions as matters of public concern. Id., ¶ 30.

On that same day, around 10:00 pm, Defendant Mayor Cruz called Plaintiff to let him know that she would impose sanctions against him, for having recommended a patient get a CT-Scan at the hippodrome several months earlier. (Docket No. 5, ¶ 31). Later that night, Defendant Mayor Cruz informed Plaintiff via text message that he was dismissed from his duties. Id., ¶ 35. Plaintiff alleges that following the August 21st conversations with Defendant, Mayor Cruz started making public defamatory statements against him, although she knew that the public comments were false. Id., ¶ 36. Two days later, Plaintiff received a letter from MSJ's Office of Human Resources notifying the intention of dismissing him from his position. Id., ¶ 41. The letter also summoned Plaintiff to appear before the Office of Human Resources on August 30, 2017 to expose any reasons why he should not be dismissed. Id. Plaintiff had the opportunity to present his version of the events before the Examining Officer. Id., ¶ 46. On December 20, 2017, Plaintiff received his dismissal letter. Id., ¶ 46. Plaintiff contends his dismissal was is in retaliation for his previous comments protesting the dismissal of his fellow coworker. Id., ¶ 50.

**II.    Standard of Review**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the Court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and

ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### III. Discussion

Defendants argue Plaintiff's complaint should be dismissed because: (1) Plaintiff fails to state a claim upon which relief may be granted, (2) that Defendant CYC is entitled to qualified immunity in her individual capacity, and that (3) Plaintiff's factual allegations involve actions taken by Defendant in her capacity of Mayor of SJ, not in her personal capacity.

**Case No. 18-1588 (GAG)**

1. <u>Section 1983: Generally</u>

Plaintiffs claims violation of his constitutional rights guaranteed by the First and Fourteenth Amendment of the United States Constitution. Title 42 Section 1983 of the Unites States Code provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Said statute "creates a private right of action for redressing abridgments or deprivations of federally assured rights." <u>Centro Médico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005). The statute does not create independent substantive rights. <u>Caraballo v. Commonwealth of Puerto Rico</u>, 990 F. Supp. 2d 165, 172-73 (D.P.R. 2014). Rather, it creates a cause of action to vindicate constitutional and federal statutory rights infringed upon by state actors. See <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979).

To establish section 1983 liability, a plaintiff must demonstrate that the defendant acted under color of state law and that defendant violated his or her federal constitutional rights, thereby causing the complained of injury. See <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). There are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges, or immunities and (2) the conduct complained of must have been causally connected to the deprivation." <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 559 (1st Cir. 1989); <u>Figueroa-Garay v. Municipality of Rio Grande</u>, 364 F. Supp. 2d 117, 122 (D.P.R. 2005).

**Case No. 18-1588 (GAG)**

### A. *Fourteenth Amendment Due Process Claim*

Defendants argue that Plaintiff was not deprived of a protected property interest and due process was provided. Plaintiff received a notice from the Human Resources Department and got the opportunity to defend himself from the charges.

The Due Process Clause of the Fourteenth Amendment states in pertinent part, that "nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process violation, Plaintiff must plausibly plea that he was: "(1) deprived of a property interest, (2) by Defendants acting under color of state law, and (3) without the availability of a constitutionally adequate process." Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 28 (1st Cir. 2008) (quoting Marrero-Gutiérrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007)).

The Fourteenth Amendment requires at a minimum "some kind of notice and some kind of opportunity to be heard." Clukey v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013) (quoting Dusenbery v. United States, 534 U.S. 161, 167 (2002)). A termination hearing must provide: (1) oral or written notice of the charges against him, (2) an explanation of the employer's evidence, and (3) an opportunity to present his side of the story. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 (1985).

The Supreme Court has made clear that "property" includes the job of a government employee who under local law cannot be dismissed except for "good cause". Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-539 (1985). Under the Fourteenth Amendment, a public employee who possesses a property interest in continued employment cannot be discharged without due process of law. Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003); See also Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st Cir. 2000). "In order to establish a constitutionally protected property interest, a plaintiff must demonstrate that []he has a legally recognized expectation that she will retain her position. . . ." Santana, 342 F.3d at 24. Puerto Rico law grants employees a property

interest in their government positions. Rosario Urdaz v. Rivera Hernandez, No. 02-1498, 2004 U.S.Dist. LEXIS 29186, at*5-6 (D.P.R. July 22, 2004). Career employees are those "who have entered the system after undergoing the merit recruitment procedure, including the probational period." Id. These employees are entitled to permanent status and may only be removed from their positions for just cause after due filing of charges. Id.

Plaintiff had been appointed Attending Physician for the Internal Medicine Department in 2003 and, in 2016, his position was reclassified as Medical Director of the Emergency Room. (Docket No. 5, ¶14-16). Defendants sustain that Plaintiff was given notice and opportunity to present his version of the facts in an administrative hearing and "he was not deprived of a protected property interest and due process was provided." (Docket Nos. 13 at 16; 14 at 15). Plaintiff received notice of the charges from the Office of Human Resources of Defendant MSJ and was given an opportunity to appear before the office for a hearing. The administrative hearing afforded Plaintiff the opportunity to expose any reasons why he should not be dismissed. After the administrative hearing, the Examining Officer confirmed the charges against Plaintiff. Plaintiff was then dismissed from his position at the MSJ's Hospital.

Based on the alleged facts, the Court finds no violation on Plaintiff's Fourteenth Amendment rights may be plausible. Therefore, Defendants' Motions to Dismiss Fourteenth Amendment Claims is **GRANTED.**

  *B. First Amendment Retaliation Claims*

Defendants CYC and MSJ argue that Plaintiff spoke as an employee of co-defendant MSJ, and not as a private citizen. As such, Defendants posit that Plaintiff is attempting to accommodate his statements so that they result in protected speech by self-servingly alleging that the conversation was held in his personal and official capacity. (Docket Nos. 13 at 12; 14 at 9).

**Case No. 18-1588 (GAG)**

In contrast, Plaintiff alleges that his expressions were made "before reporting to work, in his individual and private capacity, but also in his official capacity as the Vice-President of the Medical Faculty." Id., ¶ 28. That is, Plaintiff was expressing himself as the representative and on behalf of an organization composed of physicians practicing in the Hospital. Id.

"A State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Ramirez-Nieves v. Municipality of Canovanas, No. 16-1749, 2017 WL 1034689, at*9 (D.P.R. 2017) (quoting Rankin v. McPherson, 483 U.S. 378, 383, (1987)). Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees. Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).

For a speech to be afforded constitutional protection, a public employee must establish that he or she was speaking "as a citizen on a matter of public concern." Díaz-Bigio v. Santini, 652 F.3d 45, 51 (1st Cir. 2011). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-148 (1983). The controlling factor in determining whether a plaintiff spoke as a citizen is whether the employee's speech was made pursuant to his official duties. "This determination is outcome determinative, as statements made by public employees pursuant to their official duties are not protected for First Amendment purposes." Garcetti v. Ceballos, 547 U.S. 410, 420-21 (2006). The First Circuit has outlined several factors to aid in the determination of whether the statements in question at issue pursuant to the employee's official responsibilities:

> (1) whether the employee was commissioned or paid to make the speech in question; (2) the subject matter of the speech; (3) whether the speech was made up the chain of command; (4) whether the employee spoke at her place of employment; (5) whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it "official significance"); (6) whether the

employee's speech derived from special knowledge obtained during the course of her employment; and (7) whether there is a so-called citizen analogue to the speech.

Decotiis v. Whittemore, 635 F.3d 22, 32 (1st Cir. 2011). Additionally, First Amendment retaliation claims have three analytical prongs. A plaintiff must show "(1) whether [he or she] was speaking on matters of public concern, (2) whether [his or her] and the public's interest in free discourse on those matters outweighed the countervailing governmental interest in promoting efficient performance of public service, and (3) whether [his or her] protected expression was a motivating or substantial factor in the mayor's decision." Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 78 (1st Cir. 2000)(citing Tang v. Rhode Island Dep't of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 1998). See also (Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)); O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993)).

In the case at hand, Plaintiff was commissioned by the medical staff to talk with Mr. Cabrera regarding the discontent among the Medical Faculty of the Hospital due to the sudden termination of employment of Dr. José Martínez. (Docket No. 5, ¶ 27). Plaintiff voiced the staff's concerns about how Dr. Martínez's dismissal could place the medical interns at risk of losing their medical certifications and could cause the temporary or permanent termination of the medical residency programs. Id., ¶ 30. The Court need not address the inquiry regarding the matter of public concern test to determine whether Plaintiff spoke in his personal or official capacity when he had the conversation with Mr. Cabrera. From the facts alleged, Plaintiffs allegations are sufficient to cross the plausibility threshold of Rule 12(b)(6).

As such, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Section 1983 First Amendment claim.

*C. Conspiracy Claims: 24 U.S.C. § 1985*

Although Plaintiff's section 1985 conspiracy claims were not addressed in MSJ's Motion to Dismiss, Defendant CYC does posit in her Motion to Dismiss that Plaintiff failed to provide allegations that demonstrate that defendants participated in a common plan. (Docket No. 13 at 16). Section 1985(3) prohibits "two or more persons in any State or Territory [from] conspire[ing to]... depriv[e]…any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3).

Section 1985 allows a plaintiff to sue defendants for conspiring "to deprive others of the equal protection of the laws, or of the equal privileges and immunities under the law." Grajales v. P.R. Ports Auth., 924 F. Supp. 2d 374, 385-386 (D.P.R. 2013) (quoting Soto-Padró v. Public Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012)). Generally, a conspiracy requires a meeting of the minds to achieve an unlawful end. Rolon v. Rafael Rosario & Assocs., 450 F. Supp. 2d 153, 159 (D.P.R. 2006). Pleading a conspiracy under section 1985 "requires at least minimum factual support of the existence of a conspiracy." Francis-Sobel v. University of Maine, 597 F.2d 15, 17 (1st Cir. 1979). Therefore, a plaintiff's complaint containing vague, conclusory allegations of conspiracy, without any specification of the agreement forming the conspiracy, fails to state a claim under section 1985. Rolon, 450 F. Supp. 2d at 159-160.

Plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. The failure to allege a conspiracy defeats a cause of action under section 1985. Rolon, 450 F. Supp. 2d at 160(citing Ochoa Realty Corp. v. Faria, 634 F.Supp. 723, 726 (D.P.R. 1986)) (affirmed at 815 F.2d 812 (1st Cir. 1987)). Thereafter, mere allegations of misconduct by one person alone is insufficient to support a section 1985 claim. Hence, a complaint under section 1985 which fails to allege a conspiracy will not survive a motion to dismiss. Additionally, it has long been established that a claim under section 1985 requires "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

Here, Plaintiff alleges that Defendants "in concert, intentionally, maliciously, or with deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of his rights." (Docket No. 5, ¶ 51). However, Plaintiff fails to allege any other facts that would support a conspiracy theory. No facts brought by Plaintiff support a meeting of the minds to achieve an unlawful end. The allegations do not even suggest an agreement between the alleged conspirators or conversations among them from which an agreement can be inferred. Thus, Plaintiff waived his claim with regard to section 1985 and it is **DISMISSED** as to CYC.

2. Municipal Liability Claims

Defendant MSJ contends that Plaintiff complaint fails to adequately state a claim of municipal liability. (Docket No. 14 at 8). Municipalities are "persons" for the purpose of a Section 1983 claim and, therefore, are subject to claims pursuant to the statute. Albino v. Municipality of Guayanilla, 925 F. Supp. 2d 186, 192 (D.P.R. 2013).

In Monell v. Dept of Soc. Servs., the Supreme Court held that "local governing bodies can be sued under section 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978).

The First Circuit has also affirmed that municipal liability will attach only if the violation occurs pursuant to an official policy or custom. Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008). Moreover, local governments may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. Monell, 436 U.S. at 690. The Supreme Court explained that a municipality could not be held liable under section 1983 on a respondeat superior theory. Id.,

**Case No. 18-1588 (GAG)**

at 691. This means that even if the individual defendants are liable, the municipality may not be. Fletcher v. Town of Clinton, 196 F.3d 41, 55 (1st Cir. 1999).

A policy or custom sufficient to impose section 1983 liability on a municipal government may arise from: (1) actions by the municipal legislative body constitute official policies; (2) actions by municipal agencies or boards that exercise authority delegated by the municipal legislative branch; (3) actions by those with final authority for making a decision in the municipality constitute official policy for purposes of Section 1983; (4) by establishing a government policy of inadequate training or supervision; (5) by demonstrating the existence of custom. ERWIN CHEMERINSKY, Federal Jurisdiction 541-552 (7th ed. 2016); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480-484 (1986); Monell, 436 U.S. at 661; Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 405 (1997). When a plaintiff fails to point out unconstitutional policy, a claim of municipal liability must be grounded in a custom as evidenced by widespread action or inaction. Fletcher v. Town of Clinton, 196 F.3d 41, 55 (1st Cir. 1999).

Generally, under Puerto Rico law, the actions of a mayor constitute "the official policy of the municipality." Cordero v. De Jesus-Mendez, 867 F.2d 1, 7 (1st Cir. 1989). The Puerto Rico Autonomous Municipalities Act provides that "the mayor shall be the highest authority of the executive branch of the municipal government, and as such, is charged with the direction, administration, and supervision of the operations of the municipality." Id. § 4109. Hence, Mayor Cruz's actions alleged by Plaintiff in the Complaint constitute policy for purposes of Section 1983.

At this juncture, the Court agrees with Plaintiff's factual allegations meet the plausibility threshold, thus Plaintiff successfully alleges a municipal liability claim. The claims brought in the suit stem from Mayor Cruz's actions. Plaintiff alleges that the received a call from Mayor Cruz on the night of August 21st dismissing him from duties due to Plaintiff's conduct towards an obese

patient. However, Plaintiff sustains that his dismissal was unrelated to the obese patient, but to his statements regarding the sudden termination of Dr. Martínez.

Plaintiff's allegations, taken as true, may give rise to claims that provide entitlement to relief. Thus, the Court **DENIES** MSJ's Motion to Dismiss Plaintiff's Municipal Liability claims.

3. <u>Individual v. Official-Capacity Claims</u>

Liability may be imposed against defendants in personal-capacity suits even if the violation of the plaintiff's federally protected right was not attributable to the enforcement of a governmental policy or practice. "To establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991). In <u>Hafer</u>, the Supreme Court held that state officers are not immune from personal liability under Section 1983 solely by virtue of the official nature of their acts. <u>Id.</u>, at 31. The Court rejected Hafer's argument that section 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff. <u>Id.</u>, at 27. The First Circuit has also held that claims against state officials in their individual capacities are actionable. <u>Pontarelli v. Stone</u>, 930 F.2d 104, 113 (1st Cir. 1991).

Defendant CYC recognizes that the allegations concern her official capacity and all the claims relate to administrative decisions of the MSJ as employer of Plaintiff and not to CYC in her personal capacity (Docket No. 13 at 12). Defendants MSJ and Mayor Cruz argue that Mayor Cruz in her official capacity be dismissed from the suit because said cause of action is redundant and duplicative. (Docket No. 14 at 17). The Court agrees. The Court finds that Defendant CYC may be sued in her personal capacity.

The Supreme Court has determined that official-capacity claims are another name for suits against an entity. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-167 (1985). The First Circuit has also stated that a suit against a public official in his or her official capacity is a suit against the

governmental entity itself. *An official capacity suit against the Mayor is equivalent to a suit against the Municipality.* See Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir.2005) ("A suit against a public official in his official capacity is a suit against the governmental entity itself."). See Decotiis v. Whittemore, 635 F.3d 22, 26 (1st Cir.2011) (affirming dismissal of official-capacity defendant as redundant of the suit against local government agency). Ortiz Osorio v. Municipality of Loiza, 39 F. Supp. 3d 159, 162 (D.P.R. 2014). "Municipalities are the real parties in interest in official capacity suits against municipal officials, a judgment against a municipal official in his official capacity would in effect run against the municipality." Rodríguez Alvarez v. Municipality of Juana Díaz, Case No. 14-01924, 2015 WL 4509590, at*3 (D.P.R. 2015) (citing Saldana-Sanchez v. Lopez-Gerena, 256 F.3d 1, 4 (1st Cir. 2001)).

Defendants MSJ and Mayor Cruz argue that Mayor Cruz in her official capacity be dismissed from the suit because said cause of action is redundant and duplicative. (Docket No. 14 at 17). The Court agrees. The MSJ is a named defendant in the present lawsuit and a judgment against Mayor Cruz would consequently run against the MSJ. Thus, plaintiff's claim against the Mayor is redundant and should be dismissed.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Mayor Cruz as a defendant in her official capacity.

4. Qualified Immunity

Defendant CYC asserts that she is entitled to qualified immunity. (Docket No. 13 at 7). The Court focuses the qualified immunity discussion as to Plaintiffs' First Amendment claim. Qualified immunity shields federal and state officials from liability unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)

**Case No. 18-1588 (GAG)**

(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Pearson v. Callahan, 555 U.S. 223, 232 (2009).

The doctrine provides public officials immunity from suit and not a mere defense to liability. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). The driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

In this case, Plaintiff alleges that CYC violated his First Amendment rights, the first step in the qualified immunity test must be broken down into a three-part analysis:

> (1) Whether the speech involves a matter of public concern; (2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff.

Mihos v. Swift, 358 at 102. (quoting Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002).

At this juncture the Court need not delve into the elements of the three-part test. As previously stated, the Court will refrain from applying the matter of public concern test at this juncture. Accordingly, Defendant's CYC plea for qualified immunity is **DENIED**.

5. Supplemental State Law Claims

The doctrine of supplemental jurisdiction states that:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367. "When deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" Szendrey-Ramos v. First Bancorp, 512 F. Supp. 2d

**Case No. 18-1588 (GAG)**

81, 86 (D.P.R. 2007) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-165 (1997)).

Furthermore, Defendants request that the Court declines to exercise supplemental jurisdiction over Plaintiff's under Article II, § 1,4,6, and 7 of the Constitution of the Commonwealth of Puerto Rico, Puerto Rico Law 426, Puerto Rico Law 14, Puerto Rico Law, and the Autonomous Municipalities Act, in the absence of related federal causes of action. (Docket 13 at 17). Nevertheless, Plaintiff has ongoing federal claims pursuant to the alleged First Amendment violation.

Given that Plaintiff's claims survive Defendants' Motions to Dismiss, the Court **DENIES without prejudice** Defendants' request to dismiss supplemental claims.

*A. Articles 1802 and 1803*

Defendant MSJ argues that Plaintiff is barred from recovering damages under Puerto Rico's general negligence statute, Articles 1802 and 1803, because he is invoking specific civil rights and retaliation statutes, *i.e.* Puerto Rico Law 426, P.R. LAWS ANN. Tit. 1, § 601, Puerto Rico Law 14, Puerto Rico Law 115, P.R. LAWS ANN. Tit. 29 § 194, and the Autonomous Municipalities Act, P.R. LAWS ANN. tit. 21 § 4554, 4560, and 4562. "To the extent that a specific labor law covers the conduct for which plaintiff seeks damages, [he or she] is barred from using that same conduct to also bring a claim under Article 1802." Rosario v. Valdés, No. 07-1508, 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008). See also Díaz-Alvarez v. Ramallo Bros. Printing, Inc., No. 13-1563, 2017 WL 1277471, at *2 (D.P.R. Mar. 24, 2017).

Plaintiff's bases his Article 1802 and 1803 claims and his specific federal and state law claims on the same factual allegation. Consequently, these superfluous claims are hereby **DISMISSED**.

**Case No. 18-1588 (GAG)**

IV.  **Conclusion**

For the reasons stated above, the Court **GRANTS with prejudice** Defendants' Motions to Dismiss Fourteenth Amendment violation claims, as well as the conspiracy claim based on section 1985 on behalf of CYC. The Court **GRANTS** the dismissal of Mayor Cruz from the suit and the general claim damaged based on Puerto Rico Civil Code Articles 1802 and 1803.

The Court **DENIES without prejudice** Defendants' Motions to Dismiss section 1983 First Amendment claims, CYC's plea for qualified immunity, Defendant MSJ claim that Plaintiff failed to properly aver a cognizable section 1983 claim, and the request to reject supplemental jurisdiction.

**SO ORDERED.**

In San Juan, Puerto Rico this 5th day of September, 2019.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge