IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ADOLFO DANIEL LÓPEZ-MIERES, Plaintiff, v. CARMEN YÚLIN CRUZ-SOTO, MUNICIPALITY OF SAN JUAN, Defendants. | CIV. NO. 18-1588 (SCC) |

**OPINION AND ORDER**

Plaintiff Adolfo Daniel López-Mieres brings this lawsuit against defendants Carmen Yúlin Cruz-Soto—who, during the relevant time, was the Mayor of San Juan and, thus, controlled municipal-employment decisions—and the Municipality of San Juan, alleging that they violated his constitutional and statutory rights when they dismissed him from his Medical Administrator position at the San Juan Municipal Hospital. The defendants now move the Court to

grant them summary judgment,[1] Docket Nos. 91, 95, and strike Dr. López-Mieres's opposition filings, Docket No. 133.

## I.   MOTION TO STRIKE

The defendants move the Court to strike Dr. López-Mieres's filings because they do not comply with local rules 7(e), 5(c), and 56(c) (length, English-language materials, and opposing statement of material facts, respectively), and introduce a new theory for relief. Docket No. 133.

We agree that they do not comply with our local rules. *Compare* Docket No. 129 (thirty-three pages in length), *with* D.P.R. Civ. R. 7(e) ("[O]ppositions to [summary-judgment] motions shall not exceed fifteen (15) pages."). But we decline to strike them because one of the defendants' filings does not comply with our local rules either, *compare* Docket No. 91 (twenty-six pages in length), *with* D.P.R. Civ. R. 7(e) ("[Summary-judgment motions] shall not exceed twenty-five (25) pages."), and we must apply our local rules

---

1. The defendants moved to join each other's motion, Docket Nos. 97, 98, which we allowed, Docket Nos. 101, 103.

evenhandedly, *P.R. Am. Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 132 (1st Cir. 2010). We will, however, deem a fact admitted where Dr. López-Mieres's denial to it violates our local rules. *See infra* n.2.

We agree, moreover, that Dr. López-Mieres has introduced a new theory for relief in his opposition. In his amended complaint, he claims that "the sole reason for his discharge was in retaliation for his previous comments protesting the dismissal of his fellow employee." Docket No. 5, pg. 15. But in his opposition he claims that he was discharged "for disclosing to the [patient's advocate] the dire lack of essential equipment[] at the Defendant's Municipal Hospital, that placed multiple morbidly obese patients at risk." Docket No. 129, pg. 7. We disregard this new theory and any arguments that depend on it because we will not entertain a theory raised for the first time in an opposition to a motion for summary judgment. *See Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 59 (1st Cir. 2021).

## II.    MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the record demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Alston v. Town of Brookline*, 997 F.3d 23, 35 (1st Cir. 2021). In evaluating the record, we construe it in favor of the nonmovant. *Bryan v. Am. Airlines, Inc.*, 988 F.3d 68, 74 (1st Cir. 2021). But the nonmovant still "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021). "Conclusory allegations are not enough." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 92 (1st Cir. 2018).

Dr. López-Mieres has failed to shoulder his burden on almost all his claims. Instead of directing the Court to evidence supporting them, he frequently relies only on bare allegations. So, although we still must determine whether the defendants have met their burden to provide undisputed facts showing that they are entitled to judgment as a matter of

law, *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir.

2005), we make short work of his arguments in opposition.

## A. Undisputed Facts

Before his dismissal, Dr. López-Mieres was the Medical

Director of the San Juan Municipal Hospital Urgency Room.

Docket No. 92[2], pg. 2. Sometime in 2017 he examined a patient

with extreme morbid obesity who was accompanied by a

---

2. Many of Dr. López-Mieres's denials to the defendants' statement of undisputed facts are unresponsive or do not direct us to any record material. We have already given him an opportunity to correct this. *See* Docket No. 127, pgs. 3–4. So, where the defendants cite record material that we agree supports the fact at issue, we deem it admitted. *See* FED. R. CIV. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."); D.P.R. Civ. R. 56(c), (e) ("[T]he opposing statement shall support each denial or qualification by a record citation" or facts in the supporting statement "shall be deemed admitted."); *see also Ruiz-Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000) ("[A] failure to present a statement of disputed facts embroidered with specific citations to the record, justifies the court deeming the facts presented in the movant's statement of undisputed facts admitted and ruling accordingly."). Moreover, a denial that relies solely on Spanish-language material will be deemed an admission as well. *Gonzalez-De Blasini v. Fam. Dep't*, 377 F.3d 81, 88 (1st Cir. 2004) ("In collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials). We cite to Docket No. 92 where we have deemed a fact admitted.

patient's advocate. Docket No. 131, pg. 3. He told them that the hospital's equipment was unable to accommodate the patient's weight and that she needed to use the CT-Scan facilities at the racetrack. Docket No. 131, pg. 4.

On August 21st, Cruz-Soto called Dr. López-Mieres to tell him that she had heard of this interaction and believed that he had behaved disrespectfully. Docket No. 92, pgs. 3–4. She asked him if he had indeed told the patient that she needed to go to the racetrack for a CT-Scan. Docket No. 92, pg. 4. He said yes. *Id.* She then told him to leave work and go to human resources the next day to discuss the consequences. *Id.*

Earlier that day, however, Dr. López-Mieres had met with the hospital's Executive Director, Mr. Cabrera, in his office to discuss his colleague Dr. Martínez's sudden termination. Docket No. 131, pgs. 17–18. Mr. Cabrera was the "immediate person in the chain of command for Dr. López-Mieres" to complain to. Docket No. 131, pg. 18. In the meeting, Dr. López-Mieres said that the hospital's doctors were unhappy about Dr. Martínez's termination. Docket No. 131, pgs. 18–19.

He also expressed concern about how this would affect the hospital's academic programs and accreditation. Docket No. 131, pg. 19. When Cruz-Soto called Dr. López-Mieres that night to discuss his comments to the patient, she did not know of his meeting with Mr. Cabrera. Docket No. 92, pg. 10. For Mr. Cabrera had not told her about it. Docket No. 92, pg. 11.

On August 23rd, Dr. López-Mieres received a letter from human resources informing him that the municipality had commenced the process to dismiss him and would give him the opportunity to speak at a hearing on August 30th. Docket No. 131, pgs. 12–13. He appeared there with counsel. Docket No. 131, pg. 13. After the disciplinary process ended, the hospital sent him a letter dismissing him because of his comments to the patient. Docket No. 92, pg. 6.

**B. Legal Analysis**

*1. U.S. Constitution*

Dr. López-Mieres claims under 42 U.S.C. § 1983[3] that the

---

3. 42 U.S.C. § 1983 provides, as relevant, that a "person who, under color of any statute . . . of any State . . . , subjects . . . any citizen of the United

defendants violated his rights under the U.S. Constitution. For the Municipality of San Juan to be liable under § 1983, it must have deprived Dr. López-Mieres of his rights through "an official policy or custom." *Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 181 (1st Cir. 2011). This occurs when "a person with final policymaking authority" for the municipality causes the deprivation. *Id.* Cruz-Soto, as Mayor of San Juan, had final authority over municipal-employment decisions. *See* P.R. Laws Ann. tit. 21, § 4109(o). So if she deprived Dr. López-Mieres of his constitutional rights by dismissing him, the Municipality of San Juan will be liable for that deprivation.

Cruz-Soto argues that she is entitled to qualified immunity on his First Amendment freedom of speech claim. *See* Docket No. 95, pgs. 7–20. Qualified immunity shields officials from claims brought under § 1983 unless their

---

States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured." A municipality is a "person." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). And Puerto Rico is a "State." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 n.6 (1st Cir. 2008).

conduct violated a clearly established constitutional right. *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019). So both of our inquiries, *i.e.*, municipal liability and qualified immunity, begin with the same question: whether Cruz-Soto violated Dr. López-Mieres's constitutional rights.

### i.　First Amendment Freedom of Speech

We turn first to whether Cruz-Soto violated Dr. López-Mieres's First Amendment right to freedom of speech when she dismissed him, he says, in retaliation for his comments about Dr. Martínez's termination. Docket No. 129, pg. 13. Government officials generally may not retaliate against an employee for speaking as a citizen on a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). To determine whether Cruz-Soto has done so, we apply a three-part test: First, we decide whether Dr. López-Mieres "spoke as a citizen on a matter of public concern." *Gilbert v. City of Chicopee*, 915 F.3d 74, 82 (1st Cir. 2019). If he did, we then "balance" his interests as a citizen in speaking on those matters with the interests of the defendants, as his employers,

in "promoting the efficiency of the public services [they] perform[]." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 765 (1st Cir. 2007). Lastly, if he demonstrates that his speech was a substantial or motivating part of his dismissal, the defendants may avoid liability by showing that they would have dismissed him regardless of his speech. *Id*. at 765–66.

We turn to whether Dr. López-Mieres spoke as a citizen on a matter of public concern. For if he spoke pursuant to his official responsibilities, he has no First Amendment claim. *Garcetti*, 547 U.S. at 422–23 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."). We look to several factors to make this determination: whether he was paid or commissioned to make his speech, the subject matter of the speech, "whether the speech was made up the chain of command," whether the speech was made at his place of employment, "whether the speech gave objective observers the impression that [he] represented [the Municipality of San

Juan] when he spoke," "whether his speech derived from special knowledge obtained during the course of h[is] employment, and "whether there is a so-called citizen analogue to the speech." *Decotiis v. Whittemore*, 665 F.3d 22, 32 (1st Cir. 2011) (citations omitted).

Sifting these factors, we hold that Dr. López-Mieres voiced his concerns about Dr. Martínez's termination to Mr. Cabrera as an employee—not a citizen. First, the subject matter of the speech concerned the hospital's internal affairs: the staff's unhappiness about Dr. Martínez's termination and concerns about how it would affect the hospital's academic programs and accreditation. Next, this speech was made up the chain of command: Mr. Cabrera was the immediate person in the chain of command to make such complaints to. This conversation, moreover, occurred at his place of employment: Mr. Cabrera's office at the hospital. This type of speech, *i.e.*, "complaints or concerns made up the chain of command," "is the quintessential example of speech that owes its existence to a public employee's official responsibilities and thus is not

protected under the First Amendment." *Gilbert*, 915 F.3d at 83; *see also O'Connell v. Marrero-Recio*, 724 F.3d 117, 123 (1st Cir. 2013) (stating that the First Amendment does not protect speech "solely focused" on events in the workplace and reported internally to fulfill job responsibilities).

Our inquiry ends here. *Gilbert*, 915 F.3d at 82 (ending First Amendment retaliation inquiry where "claim flounder[ed] at the first prong"). Because there was no constitutional violation, Cruz-Soto is shielded from this claim by qualified immunity and there is no municipal liability. We, therefore, grant summary judgment to the defendants.

## ii. *First Amendment Freedom of Association*

We turn next to Dr. López-Mieres's claim that the defendants deprived him of his First Amendment right to freedom of association. Docket No. 5, pg. 15. The defendants argue that they are entitled to summary judgment because he has presented no evidence supporting it. Docket No. 91, pg. 18; Docket No. 95, pg. 24; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may

be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Indeed, he merely alleges that they deprived him of this right. Docket No. 129, pg. 10.

The First Amendment prohibits the government from "wielding its power to interfere with its employees' freedom to believe and associate." *Rutan v. Republican Party*, 497 U.S. 62, 76 (1990). But, to bring a claim that an adverse employment decision was motivated by the employee's associational choices, the employee must show "some evidence that the association at issue is political or otherwise constitutionally protected." *Barry v. Moran*, 661 F.3d 696, 699 (1st Cir. 2011). Dr. López-Mieres has directed us to no such evidence. We, thus, grant the defendants summary judgment. *See Celotex*, 477 U.S. at 322–23 (stating that where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the movant is "entitled to a judgment as a matter of law").

iii.     *Fourteenth Amendment Equal Protection*

We turn to Dr. López-Mieres's claim that the defendants denied him equal protection when they dismissed him. Docket No. 129. But he provides no evidence that he was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Shurtleff v. City of Bos.*, 986 F.3d 78, 97 (1st Cir. 2021); Docket No. 91, pg. 20. And the U.S. Supreme Court has held that a "class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008). The U.S. Court of Appeals for the First Circuit, moreover, has extended this rule to challenges against broadly discretionary decisions made by state actors. *See Caesars Mass. Mgmt. Co., LLC v. Crosby*, 778 F.3d 327, 336 (1st Cir. 2015) (stating that "no class of one cause of action can be recognized against state actors" given broad discretion in making the challenged decision). Because Cruz-Soto had broad discretion to make employment decisions, *see*

P.R. LAWS ANN. tit. 21, § 4109(o), Dr. López-Mieres has no cognizable Equal Protection claim against her. We, therefore, grant the defendants summary judgment on it. [4]

   2.  *42 U.S.C. § 1985*

We turn now to Dr. López-Mieres's claim that the defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985. Docket No. 5, pg. 16. But, as the defendants note, Docket No. 91, pg. 17, he presents no evidence supporting it, *see* Docket No. 129, pg. 10. A civil-rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (quoting *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2007)). Because Dr. López-Mieres directs us to no evidence supporting this claim,

---

4. Because we have granted the defendants summary judgment on Dr. López-Mieres's federal claims, we decline to consider their abstention argument, which they made in the event that we did not grant summary judgment. *See* Docket No. 95, pg. 26.

we grant the defendants summary judgment. *Estate of Bennett*, 548 F.3d at 78 (affirming summary judgment where nonmovant "presented no evidence, either direct or circumstantial, of an agreement . . . from which a reasonable jury could have inferred a conspiracy").

### 3.   *Puerto Rico Constitution*

Dr. López-Mieres claims that the defendants violated Article II Sections 1, 4, 6, and 7 of the Puerto Rico Constitution when they dismissed him. Docket No. 129, pg. 10.

#### i.   *Freedom of Speech*

We turn first to his claim that the defendants violated his right to free speech under the Puerto Rico Constitution when they dismissed him in retaliation for the comments that he made about Dr. Martínez's termination. *See* P.R. CONST. art. II, § 4. Puerto Rico, however, has adopted the same test federal courts use to evaluate First Amendment retaliation claims. *See Leopoldo Hernández-Estrella v. Junta de Apelaciones del Sistema de Educación Pública Departamento de Educación*, 147 D.P.R. 840, 848–50 (P.R. 1999). So, for the reasons explained

above, *see supra* Section II.B.1.i, we grant the defendants summary judgment.

### ii.     Freedom of Association

We turn next to his claim that the defendants violated his right to freedom of association under the Puerto Rico Constitution. *See* P.R. CONST. art. II, § 6. As they did for his federal claim, the defendants argue that he has not presented any evidence supporting it. Docket No. 91, pgs. 18–19, 21. They are correct. *See* Docket No. 129, pgs. 10, 23. So even though the Puerto Rico Constitution provides a broader association right than the U.S. Constitution, *see Rodríguez-Casillas v. Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico*, 202 D.P.R. 428, 448 (P.R. 2019), the defendants are entitled to summary judgment.

### iii.     Equal Protection

We turn to Dr. López-Mieres's claim that the defendants violated his right to equal protection under the Puerto Rico Constitution when they dismissed him. *See* P.R. CONST. art. II, § 1. The defendants assert that he directs us to no evidence

supporting this claim, either. Docket No. 91, pgs. 22–23. And they are right. *See* Docket No. 129, pg. 23. To survive summary judgment, he needs to direct us to evidence showing that he was dismissed based on his "race, sex, birth, social origin or condition, or political or religious ideas." P.R. CONST. art. II, § 1; *see also Salas v. Municipio de Moca*, 19 P.R. Offic. Trans. 668, 675 (P.R. 1987) ("The constitutional equal protection clause does not require equal treatment for all citizens, but prohibits unfair and unequal treatment [based on an improper classification]."). He fails to do so. We, thus, grant the defendants summary judgment. *See Dow v. United Brotherhood of Carpenters & Joiners*, 1 F.3d 56, 58 (1st Cir. 1993) ("While the required proof need not necessarily rise to the level of admissible trial evidence, it must consist of something more than conclusory allegations, improbable inferences, and unsupported speculation.").

                    iv.    *Due Process*

We turn finally to Dr. López-Mieres's claim that the defendants denied him due process of law under the Puerto

Rico Constitution when they dismissed him. *See* P.R. CONST. art. II, § 7. Under Puerto Rico law, public employees are entitled to a pretermination hearing. *Torres-Solano v. P.R. Tel. Co.*, 127 D.P.R. 499, 523 (P.R. 1990). Dr. López-Mieres agrees that he received a letter from the hospital's human resources department informing him that the Municipality of San Juan had commenced the process of dismissing him and scheduled a hearing before an examiner to give him a chance to explain why he should not be dismissed. And he agrees that he attended that hearing with legal representation.

He has not told us how he was denied due process despite a pretermination hearing where he was represented by counsel and given the opportunity to be heard. We, therefore, grant the defendants summary judgment on his due process claim under Puerto Rico law.

### 4.   *Puerto Rico Civil Code*

Dr. López-Mieres claims first that that the defendants violated P.R. LAWS ANN. tit. 1, §§ 603 (Puerto Rico's Whistleblowers Protection Act) and 612. These provisions,

however, were repealed and replaced, *see* Law No. 2, Jan. 4, 2018, art. 10.1, by the Anticorruption Code for the New Puerto Rico, P.R. LAWS ANN. tit. 3, § 1884a. So, favorably to him, we will evaluate his claim under the new law. [5]

Section 1884a, like repealed §§ 603 and 612, prohibits retaliation against any person who discloses to an investigation, official or employee with investigative functions, or legislative, administrative, or judicial forum information about corruption or any improper or illegal act concerning the use of public property or funds. Because Dr. López-Mieres has pointed us to no evidence showing that Mr. Cabrera was an official or employee with investigative functions or that he disclosed conduct involving corruption or the improper use of public property or funds, we hold that the defendants are entitled to judgment as a matter of law. *See Frederique-Alexandre v. Dep't of Nat. & Env't Res.*, 478 F.3d 433,

---

5. If we evaluated his claim under the repealed provisions, the outcome would be the same because they also require Dr. López-Mieres to direct us to evidence of corruption or an improper act concerning the use of public property or funds.

440 (1st Cir. 2007) (affirming summary judgment on a claim under the Puerto Rico Whistleblowers Protection Act because its proponent "failed to identify any information he had disclosed regarding public financial malfeasance").

He claims finally that the defendants violated P.R. LAWS ANN. tit. 29, §§ 194, 194a, and 194b, which provide a private right of action for employees who were dismissed because of testimony they offered before a legislative, judicial, or administrative forum or testimony offered through the internal procedures of the company or before any employee in a position of authority. P.R. LAWS ANN. tit. 29, § 194a(a). To establish a prima facie case, Dr. Lopez-Mieres must prove that he engaged in one of these activities and was terminated. *Id.* § 194a(c). The parties agree that he relayed staff complaints about Dr. Martínez's termination to Mr. Cabrera, his immediate supervisor, and was dismissed. He, therefore, has established a prima facie case.

Next, the defendants may rebut the prima facie case by providing a legitimate, nondiscriminatory reason for his

dismissal. *Id.* They have done so. The letter Dr. López-Mieres received from the hospital's human resources department says that he was dismissed because the defendants believed that his comments to the patient were offensive and degrading. Docket No. 94-1.

Finally, it falls to Dr. López-Mieres to prove that the defendants' proffered reason is pretextual. P.R. LAWS ANN. tit. 29, § 194a(c). He fails to do so. He directs us to no evidence showing that the defendants even had knowledge of his comments to Mr. Cabrera. The defendants, moreover, direct us to Mr. Cabrera's deposition where he says that he never informed Cruz-Soto of his meeting with Dr. López-Mieres and Cruz-Soto's statement that she did not know about it. So, because there is no evidence that would allow a reasonable jury to find that the defendants' proffered reason is pretextual, we grant the defendants summary judgment.

### III.   CONCLUSION

In sum, we **DENY** the defendants' motion to strike Dr. López-Mieres's filings in opposition to their motions for

summary judgment (Docket No. 133). And we **GRANT** their motions for summary judgment (Docket Nos. 91, 95).

But there is one claim remaining: that the defendants violated Puerto Rico's Autonomous Municipalities Act, P.R. LAWS ANN. tit. 21, §§ 4554, 4560, 4562. Docket No. 5, pg. 17. This claim is undeveloped and unsupported. And these provisions have been repealed and replaced. *See* Law No. 107, Aug. 14, 2020, art. 8.003. Neither defendant, however, has asked us to grant them summary judgment on it. We may grant summary judgment sua sponte if (1) "discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts," and (2) Dr. López-Mieres is given "notice and a chance to present [his] evidence on the essential elements of the claim." *Redondo Constr. Corp. v. Izquierdo*, 746 F.3d 21, 29 (1st Cir. 2014).

So we **ORDER** Dr. López-Mieres to **SHOW CAUSE** why we should not dismiss this claim. He has **ten (10) days** to direct us to the private right of action that allows him to bring a claim against the defendants for violating this statute, the

elements of this claim, and the evidence in the record that would allow a reasonable jury to find in his favor. If he fails to do so, we will grant the defendants summary judgment.

Finally, we note that Dr. López-Mieres's amended complaint contains claims against fictitious persons and entities. Docket No. 5, pgs. 2–3. Fictitious-party pleading is disfavored in federal court except where "discovery is likely to reveal the identity of the correct defendant and good faith investigative efforts to do so have already failed." *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 596 (1st Cir. 2011). We **ORDER** Dr. López-Mieres to **SHOW CAUSE** why we should not dismiss these parties now that discovery has closed. He has **ten (10) days** to do so.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of November, 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE